**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| BLANCA CORREA, *on behalf of herself,*<br>*FLSA Collective Plaintiffs and the Class,*<br><br>                  Plaintiff,<br><br>    v.<br><br>NRP FOOD SOLUTIONS LLC and<br>NITIN PENDHARKAR,<br><br>                 Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE<br>ACTION COMPLAINT**<br><br>Jury Trial Demanded |

---

     Plaintiff, BLANCA CORREA ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, NRP FOOD SOLUTIONS LLC ("Corporate Defendant"), and NITIN PENDHARKAR ("Individual Defendant"; and, together with Corporate Defendant, "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

     1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she is entitled to recover from Defendants: (1) unpaid wages, including overtime, due to fixed salary payments without payment for all overtime hours, (2) liquidated damages, and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she is entitled to recover from Defendants: (1) unpaid wages, including overtime, due to fixed salary payments without payment for all overtime hours, (2) statutory penalties for failing to provide wage and hour notices upon hiring and as legally required thereafter, (3) statutory penalties for failing to provide proper wage statements for each payment period, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff further alleges, on an individual basis, that Defendants violated the New York City Earned Safe and Sick Time Act, ("ESSTA"), when they retaliated against Plaintiff by firing her for asserting and exercising her rights under the ESSTA. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.      Plaintiff BLANCA CORREA is a resident of Bronx County, New York.

7.      At all relevant times to this action, Defendants have owned and operated a food/grocery store that also provides catering services under the trade name "NRP FOOD SOLUTIONS" located at 1588 Williamsbridge Rd, Bronx, NY 10461 (the "Food Store"). Notably, as Plaintiff worked as a delivery woman, part of Defendants' daily operations was a delivery service that caters to shelters.

8.     Corporate Defendant, NRP FOOD SOLUTIONS LLC, is a domestic limited liability company organized under the laws of the State of New York with a principal place of business at 1588 Williamsbridge Rd, Bronx, NY 10461 and an address for service of process located at c/o United States Corporation Agents, Inc., 7014 13th Avenue, Suite 202, Brooklyn, NY 11228.

9.     Individual Defendant NITIN PENDHARKAR is the owner and executive officer of Corporate Defendant. NITIN PENDHARKAR exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. NITIN PENDHARKAR had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times, employees could complain to NITIN PENDHARKAR regarding any of the terms of their employment, and NITIN PENDHARKAR would have the authority to effect any changes to the quality and terms of their employment. NITIN PENDHARKAR ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. NITIN PENDHARKAR had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

10.     At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

11.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

3

12.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to cashiers, cooks, food preparers, store clerks, janitors, custodians, baggers, delivery drivers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages, including proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to compensating non-exempt employees at a fixed salary rate regardless of overtime hours worked. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

16.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure

("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to cashiers, cooks, food preparers, store clerks, janitors, custodians, baggers, delivery drivers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

18.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

19.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of: (i) failing to pay wages, including overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek due to fixed salary payments to non-exempt employees at a fixed salary rate without additional compensation for overtime hours; (ii) failing to provide Class members with proper wage statements with every

5

payment of wages; and (iii) failing to properly provide proper wage notices to Class members, at date of hiring and dates of all wage changes, pursuant to NYLL.

20.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and the Class members within the meaning of NYLL;

b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c)    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d)    Whether Defendant properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

7

e)  Whether Class members are non-exempt workers being paid a fixed salary with no additional compensation for overtime hours worked;

f)  Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

g)  Whether Defendants paid the Plaintiff and Class members the overtime premium for all hours worked in excess of forty (40) each workweek;

h)  Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

i)  Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class members, and whether those wage statements properly stated Plaintiff's and Class members' overtime compensation and all actual worked in accordance with NYLL.

## **STATEMENT OF FACTS**

*Wage and Hour Claims*

25.  In or around January 2023, Plaintiff was hired by Defendants to work as a delivery driver for NRP Food Solutions located at 1588 Williamsbridge Rd, Bronx, NY 10461. Plaintiff was employed by Defendants until on or about March 2024, when her employment with Defendants was terminated due to retaliation as described in detail below.

26.  From the start of her employment to in or about April 2023, Plaintiff was regularly scheduled to work from 10:00 a.m. to 5:00 p.m. Monday through Wednesday, with a 30-minute meal break, for a total of nineteen and a half (19.5) hours per week. From in or about April 2023 to December 2023, Plaintiff was regularly scheduled to work from 10:00 a.m. to 5:00 p.m. Monday

through Saturday, with a 30-minute meal break, for a total of thirty-nine (39) hours per week. From in or about December 2023 until the end of her employment, Plaintiff was regularly scheduled to work from 1:00 p.m. to 9:00 p.m. Monday through Saturday, with a 30-minute meal break, for a total of forty-five (45) hours per week. On top of her scheduled hours, Plaintiff worked additional hours that raised her weekly hours to over forty (40) hours per workweek from in or around April 2023 to the end of her employment. Similarly, FLSA Collective Plaintiffs and Class members worked over forty (40) hours.

27.     Throughout her employment, Plaintiff was required to stay and work for about an hour to an hour and a half past her scheduled shift. Thus, from April 2023 to the end of her employment, Plaintiff worked an additional six (6) to nine (9) hours per workweek on top of her scheduled hours. This resulted in an average of six and a half (6.5) overtime hours for the period April 2023 to December 2023 and an additional average of seven and a half (7.5) overtime hours for the period December 2023 to March 2024. However, because Plaintiff was paid based on a fixed salary, Plaintiff was not compensated any overtime premiums for these overtime hours from April 2023 to December 2023; and was generally only compensated two (2) hours of overtime per week from December 2023 to March 2024. *See* **Exhibit A,** Plaintiff's paystubs starting December 2023. Similarly, FLSA Collective and Class members were required to work past their scheduled shifts but were not compensated any overtime premiums for the post-shift hours.

28.     Throughout her employment, Plaintiff was paid a fixed salary weekly regardless of how many hours she worked each workweek. From the start of her employment to April 2023, 2023, Plaintiff was paid five hundred dollars ($500.00) per workweek. From April 2023 to the end of her employment, Plaintiff was paid one thousand dollars ($1,000.00) per workweek. Plaintiff's paychecks were designed to show as if she were paid hourly. However, the forty-two (42) hours

designated for every week was not accurate and Plaintiff was just paid a fixed salary of $1,000 weekly regardless of how many hours she worked. *See* **Exhibit A**, a sample of Plaintiff's paychecks. Plaintiff was not compensated overtime premium for *all* hours she worked in excess of forty (40) hours in each workweek. Similarly, FLSA Collective Plaintiffs and Class members were similarly paid on a fixed salary basis without any overtime premium for all hours worked over forty (40) each week.

29.    Throughout her employment, Plaintiff was not required to clock in or out. Defendants did not have a device or a time-tracking system that records their employees' work hours. As such, Defendants do not have records of Plaintiff's actual hours and merely compensate Plaintiff a fixed salary regardless of how many hours Plaintiff worked. Similarly, FLSA Collective and Class members were not required to clock-in and clock-out and are paid a fixed salary for all hours worked, including those over forty (40).

30.    Throughout her employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

31.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

32.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

33.    Defendants further violated the WTPA by failing to provide Plaintiff and Class

members with accurate wage statements, because wage statements that do not reflect: (1) the actual number of hours worked by the employee, (2) the overtime hours worked by the employee, and (3) the proper overtime rate, do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

34.   In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

35.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

36.    Had the wage statements Defendants provided to Plaintiff and Class members accurately listed the total wages that Plaintiff and Class members actually earned, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond with the former or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the proper wages that Plaintiff and Class members actually earned. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

37.    The failure to provide proper wage notices and accurate wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

38.    Defendants knowingly and willfully operated their business with a policy of not

providing proper wage notices and wage statements as required by NYLL.

39.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

40.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011)

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

41.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

42.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

43.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay

their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

44.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

45.    Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

46.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks

credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

47.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

48.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members the proper overtime rate for hours worked in excess of forty (40) in each workweek due to being paid a fixed salary.

49.    Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

*ESSTA Claims*

50.    In or around March 2024, Plaintiff had an accident on the job wherein she had hard fall from pushing a supply cart. Due to this accident, Plaintiff hurt her back and experienced extreme pain to the point that she was unable to work or lift anything.

51.    Plaintiff then sought medical attention where it was found that she injured her spine terribly. As such, the doctor ordered her to take a week off from work.

52.    At that point, Plaintiff had already accrued at least eighty (80) hours' worth of sick leave under the ESSTA.

53.    Plaintiff showed Defendants the doctor's note and was permitted to take a week off.

54.    After a week, Plaintiff returned to her doctor for a follow-up appointment. As Plaintiff was still experiencing extreme pain, the doctor ordered her to take another two weeks off work.

55.    Accordingly, Plaintiff showed Defendants the doctor's note ordering her to take additional two weeks off. However, Defendants refused to let Plaintiff take an additional two weeks off despite Plaintiff having accrued sick leave under the ESSTA.

56.    Instead of accommodating Plaintiff's request for leave which she has the right to use, Defendants terminated Plaintiff and told her, "sorry, we don't need you anymore."

57.    Defendants violated the ESSTA when they terminated Plaintiff for asserting and exercising her right for leave to attend to her serious health condition. Plaintiff formally attempted to assert her rights under the ESSTA but was denied by Defendants.

58.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

59.    Plaintiff realleges and reavers all the foregoing allegations of this Class and Collective Action Complaint as if fully set forth herein.

60.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62.    At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

63.    At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiff's rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to fixed salary.

64.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

65.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

66. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

67. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime compensation, due to fixed salary, plus an equal amount as liquidated damages.

68. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

69. Plaintiff realleges and reavers all the foregoing allegations of this Class and Collective Action Complaint as if fully set forth herein.

70. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

71. At all relevant times, Defendants willfully violated Plaintiff's and Class members' rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, due to fixed salary.

72. Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

73. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because

they did not accurately state the correct hourly rate, correct overtime rate, and all hours worked, including overtime hours.

74.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

75.    Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages, including overtime compensation, due to fixed salary; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## COUNT III
## INTERFERENCE AND RETALIATION UNDER THE
## EARNED SICK AND SAFE TIME ACT

76.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

77.    Defendants knowingly and willfully failed to provide Plaintiff with proper sick leave as required under the ESSTA.

78.    Defendants are employers covered by ESSTA's sick leave provision as an "employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year." NY Lab. Law § 196-B(1)(b).

79.    Defendants are required to give employees sick leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee. . .regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

80.     NYLL makes it unlawful for an "employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner, discriminate, or retaliate against any employee because such employee has exercised his or her rights afforded under this section, including, but not limited to, requesting sick leave and using sick leave, consistent with the provisions of section two hundred fifteen of this chapter." New York Lab. Law § 196-B(7).

81.     Due to Defendants' ESSTA violations, Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and ESSTA;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, including overtime compensation, due to fixed salary;

d.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

g.  All applicable compensatory and punitive damages under the ESSTA;

h.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

j.  Designation of this action as a Class Action pursuant to FRCP 23;

k.  Designation of Plaintiff as a Representative of the Class; and

l.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: July 10, 2024

Respectfully submitted,

By:  ___*/s/ C.K. Lee*_____
         C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff and the Class*